UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| TERRY W. MILLER, | ) | |
|---|---|---|
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:11-CR-81 |
| | ) | 2:14-CV-322 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. Section 2255, [Docs. 800, 801],[1] filed by Terry W. Miller, ("Miller" or "petitioner") The government has responded in opposition, [Doc. 844], and petitioner has replied, [Doc.865],[2] and the matter is ripe for disposition. The Court has determined that the files and records in the case conclusively establish that, except as discussed below, the petitioner is not entitled to relief under § 2255 and his motions will be DENIED and the case DISMISSED.

**I.    Factual and Procedural Background**

On September 13, 2011, a federal grand jury returned a 45-count indictment charging petitioner and 20 co-defendants for their respective roles in a large-scale drug trafficking conspiracy, [Doc. 3]. Petitioner and seven co-defendants were charged in Count Three with conspiracy to distribute and possess with intent to distribute oxycodone in violation of 18 U.S.C. §§ 846 and 841(b)(1)(C), [*Id*., at 7]. Miller subsequently pled guilty to Count Three on February

---

[1] All docket numbers refer to the docket sheet in No. 2:11-CR-81.
[2] On February 27, 2015, petitioner's trial counsel filed a pleading titled "Attorney Response To Motion Under 28 U.S.C. § 2255," [Doc. 865], and petitioner responded to that filing on March 9, 2015, [Doc. 871]. Petitioner's response apparently prompted trial counsel to file a "Supplemental Attorney Response To A Motion Under 28 U.S.C. § 2255, [Doc. 873], along with his attached declaration, [Doc. 873-1], which in turn resulted in further reply from the petitioner, [Doc. 877]. Because the Court considers counsel's "Response" to have been improvidently filed, the Court has considered none of these pleadings in connection with this memorandum opinion and order.

1

Case 2:11-cr-00081-JRG-MCLC  Document 952  Filed 01/12/17  Page 1 of 12  PageID #: 6306

21, 2012, [Doc. 830], pursuant to a negotiated plea agreement, [Doc. 358]. He agreed that he had conspired with at least one other person to distribute and possess with intent to distribute approximately 1,620 30-milligram oxycodone pills and 810 15-milligram oxycodone pills. [*Id*., at ¶ 4(a)]. During the course of the conspiracy, Miller and other traveled to Florida to various pain clinics where they obtained prescriptions for oxycodone pills which were then filled at pharmacies either in Florida or Georgia. The pills were then used or sold in the Eastern District of Tennessee. [*Id*., at ¶ 4(b)]. Pursuant to a Title III wiretap, petitioner was intercepted numerous times speaking with William McMahan, Jr., the organizer of the conspiracy, about plans for travel to Florida and various other aspects of the conspiracy. [*Id*., at ¶¶ 4(c)-(p)]. On September 2, 2010, Miller and co-defendant, Brandon Miller, were stopped by the Jefferson County Sheriff's Office in possession of 65 15-milligram oxycodone pills and 240 30-milligram oxycodone pills. [*Id*., at ¶ 4(q)], At the conclusion of the change of plea hearing, a sentencing hearing was scheduled and a presentence investigation report, ("PSR") was ordered. [Doc. 441].

Based on the stipulated quantity of oxycodone pills for which petitioner was responsible, the probation officer found a base offense level of 28. After a three-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b), petitioner's total offense level became 25. [PSR, at ¶¶ 29, 34, 41-43]. No other adjustments were made to the offense level. The probation officer determined petitioner's criminal history category to be III based on a 1991 aggravated assault conviction and a 2004 conviction for possessing a firearm as a felon. [*Id*., at ¶¶ 66, 70-72]. At the time, petitioner had twenty-three adult convictions, one pending charge for kidnapping, and twenty-five additional arrests [Id., at ¶¶ 47-70, 74-99]. As a result, petitioner's advisory guidelines range was 70-87 months of imprisonment. [*Id*., at ¶ 17]. Miller, through counsel, objected to the PSR on the basis that no criminal history points, rather than three, should be

assessed for the 1991 aggravated assault conviction on the ground that the conviction had expired more than fifteen years prior to the instant offense. *See* USSG § 4A1.1(a), com., app n.1 ("A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted ***unless*** the defendant's incarceration extended into this fifteen-year period. *See* § 4A1.2(e)") (bold italics added). The government, on the other hand, moved for an upward departure pursuant to USSG § 4A1.3 on the ground that the defendant's calculated guidelines range "drastically under state[d] the Defendant's history and characteristics" and did not adequately account for the seriousness of his criminal history or his danger to the community. [Doc. 595, at 1-2]. The government suggested that a criminal history category VI more accurately reflected petitioner's criminal history and argued for a sentence of 137 months. [*Id.*].

At sentencing on July 30, 2012, petitioner's attorney sought to withdraw his objection to the PSR, explaining that a review of the underlying records from the Tennessee Department of Correction established that Miller had been released from prison in May, 1995, a date that "extended into the 15-year period." [Doc. 735, at 4-5]. The Court asked petitioner if he consented to withdrawal of the objection and petitioner explained that, although he was released in May, 1995, within the 15-year period, his sentence had actually expired about a year earlier because he had actually served six years on two concurrent five year sentences, i.e., that his sentence had actually expired much earlier than May, 1995, even though he remained in custody. [*Id.*, at 6-7]. This apparently happened, according to the documents filed by petitioner with his motion, because the trial judge did not enter the order making the two five-year sentences concurrent, instead of consecutive, until February 20, 1997. [*See* Doc. 801, Ex. C]. The Court ultimately overruled the objection, [*id.* at 8-9], and agreed with the government that an upward departure was necessary because petitioner's criminal history category "substantially under

3

represent[ed] the seriousness of [his] criminal history and the likelihood that [he] w[ould] commit other offenses." [*Id*., at 26]. Miller was sentenced to 117 months of imprisonment and judgment was entered on August 8, 2012, [Doc. 613].

Petitioner appealed to the Sixth Circuit, [Doc. 615], challenging the propriety of the sentence imposed. He argued "that the district court erred in sentencing him above the applicable guidelines range because: (1) nearly all of his prior convictions occurred more than 11-years prior to the instant offense; (2) with respect to his 1991 aggravated assault conviction for which he was incarcerated until May, 1995 and for which he received three criminal history points, he 'was only about 3 (three) months away from not having this offense count toward his [c]riminal [h]istory [c]ategory'; (3) the last violent crime he committed was over 19 years ago; (4) the drug quantity attributable to him was at the low end of the range associated with his base offense level; and (5) the instant offense did not involve violence or firearms." [Doc. 762, at 2]. The Sixth Circuit rejected all these claims and found that the district court "did not abuse its discretion and took care to ensure that the sentence was not greater than necessary to comply with the purposes of § 3553(a)." [*Id*., at 4]. Petitioner did not seek review by the Supreme Court and his § 2255 motion was timely filed in this Court.

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in

4

the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo,* 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson,* 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), cert. denied, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), cert. denied, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 Petitioner claims he was denied his sixth amendment right to effective

5

assistance of counsel, it is noted that an attorney is presumed to have provided effective assistance, and the Petitioner bears the burden of showing that the attorney did not, *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). Petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington,* 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). If Petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. In other words, he must show that he was prejudiced by the attorney's deficient representation:

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). [A court's ] review of counsel's performance is "highly deferential." Id. at 689, 104 S.Ct. 2052. [The court must] "judge the reasonableness of the time of counsel's conduct." *Id*. at 690, 104 S.Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S.Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. ——, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

*Docherty v. United States*, 536 Fed. Appx. 547, 551 (6th. Cir. 2013).

**III. Analysis**

Miller appears to make two broad claims of ineffective assistance of counsel: (1) that

6

counsel stated to him the AUSA 'would not' move to enhance his sentence if he signed the plea," a statement that turned out to be "a flat out lie"; and (2) counsel failed to properly investigate the circumstances surrounding his 1991 conviction for aggravated assault. The Court will address each in turn.

### A. Enhanced Sentence

Although the Court is not clear what petitioner means by an "enhance[d] sentence," the Court construes the first claim to be that counsel assured him that he would not receive an above guidelines range sentence if he signed the plea agreement. Petitioner states that he questioned the "pill count" contained in his plea agreement and that he was told by counsel "AUSA Heberts [sic] stated that she would not move for an enhancement if I signed the plea offer." [Doc.800-1at 2]. This claim, however is flatly contradicted by petitioner's own under oath testimony at the change of plea hearing.

Petitioner testified under oath at the change of plea hearing that he had read and signed the plea agreement, that his attorney had explained the terms and conditions of the agreement, and that he fully understood all its terms and conditions. [Doc. 830, at 7]. The plea agreement clearly set out the statutory maximum sentence of 20 years and the parties' agreement that "[]he Court may impose any lawful term[ ] of imprisonment." [Doc. 358, at ¶¶ 1, 5(a)]. The agreement further provided that "[a]ny estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in the case are not binding on the Court . . ." and that he understood "that the sentence in this case would be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties." [*Id.*, at ¶ 5(c)]. The defendant further acknowledged "that the sentencing determination will be based upon the entire scope of the defendant's criminal

7

conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553." [*Id*].

Petitioner was clearly advised of the maximum possible sentence at the change of plea hearing, [Doc. 830, at 13-14], and he testified that "no officer or agent of the government had promised [him] or suggested to [him] that he would receive a lighter sentence or any other form of leniency if [he] ple[d] guilty" and that no "promises or threats of any kind [had] been made by anyone to induce [him] to plead guilty." [*Id*., at 10]. Petitioner testified unequivocally that he understood that the Court could determine neither his advisory guideline sentencing range nor his sentence until a PSR was completed, [*id*., at 16], and that the Court would consider his advisory guideline range and all the 18 U.S.C. § 3553(a) factors before deciding on a sentence. [*Id*., at 17]. Most importantly, petitioner testified that he understood that his sentence could be more severe than recommended by the guidelines and that regardless of what his advisory guideline range might be, the Court could impose a 20-year sentence and, understanding that, that he still wanted to plead guilty. [*Id*., at 18]. Counsel stated to the Court that he had made no representation to petitioner about what sentence the Court might impose other than to give him an estimate of his advisory guideline range, an estimate petitioner acknowledged was not binding on the Court. [*Id*. at 19].

These statements, made under oath by petitioner, are binding on petitioner where, as here, the Court follows the required procedure under Rule 11 of the Rules of Criminal Procedure. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity"); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (petitioner is bound by statements made under oath at change of plea hearing where the court complies with Rule 11). To hold otherwise, "would condone the practice of petitioners providing

8

untruthful responses to questions during plea colloquies." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). Petitioner's sworn testimony thus contradicts his claim that he was assured a within-guideline sentence if he signed the plea agreement and this claim lacks merit.

To the extent petitioner once again claims that the 30-month variance resulted in an unreasonable sentence, the claim is foreclosed by a specific holding of the Sixth Circuit that the 30-month variance was "well below the statutory maximum of 20 years of imprisonment and below the 137 months urged by the government," and "not greater than necessary to comply with the purposes of § 3553(a)." [Doc. 762, at 4].

### B. Lack of Proper Investigation

Petitioner faults counsel for failing to obtain "documents that prove his state sentence had expired well before the date he was released from prison." [Doc. 801, at 3]. Petitioner claims that, had counsel done a proper investigation, "he to[o] would have found that his clien[t]'s sentence had already expired and by not doing a proper investigation, his client's criminal history category was raised an extra level with the end result of his client having to serve additional prison time." [*Id*. at 4]. This claims fails for several reasons.

First of all, the documents produced by petitioner, even if not the same records reviewed by counsel, show exactly the same information available to this Court at the time of sentencing. Those documents clearly establish that petitioner was released from prison in early May, 1995. It was clear to the Court at the time, and the government did not argue otherwise, that the sentence might have expired earlier based on the February 20, 1997 order of the Circuit Court of Cocke County that petitioner's two-five year sentences be served concurrent to each other. [Doc. 809, at 11-12]. Petitioner indeed appears to have served more than five years, taking into account credit earned for good behavior. [*Id*., at 13]. That, however, would not have changed this

9

Court's ruling that the term of incarceration "did in fact extend into the 15-year period," [Doc. 730, at 8], and the three criminal history points were properly assessed pursuant to USSG §§ 4A1.1(a) and 4A1.2(e). Petitioner cannot escape the plain language of section 4A1.2(e) which provides that the prior sentence is counted if it "resulted in the defendant ***being incarcerated*** during any part of such fifteen-year period." USSG § 4A1.2(e) (emphasis added). Counsel was not ineffective here. He objected to the points assessed but candidly acknowledged that the records reflected that the period of incarceration extended into the fifteen-year period. [Doc. 735, at 5].[3] None of the documents now produced would have changed counsel's conclusion or the Court's holding.

Second, even if petitioner could show deficient performance on the part of counsel, he cannot establish prejudice for the simple reason that his sentence was well above his advisory guideline range based on the Court's determination that his criminal history category did not adequately account for the seriousness of his criminal history or the danger he posed to the community. In other words, the petitioner cannot show that the result of his sentencing would have been any different even if his advisory guideline range was lower. As the Sixth Circuit observed, the Court fully considered that "his sentence for the 1991 aggravated assault charge expired only a few months into the 15-year window." [Doc. 762, at 3]. Notwithstanding that fact, the Court found that an upward departure to 117 months was needed to achieve a sentence "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), given that criminal history category III understated "[b]oth the seriousness of the criminal history and the likelihood of recidivism." [*Id.*]. Miller's criminal history began at age 18 and continued throughout his entire adult life, resulting in 24 convictions. Any breaks in criminal activity occurred at times when

---

[3] The 15-year period extended backwards to March, 1995.

10

Case 2:11-cr-00081-JRG-MCLC Document 952 Filed 01/12/17 Page 10 of 12 PageID #: 6315

Miller was incarcerated for prior offenses, including the ten years prior to the commencement of the instant offense. Despite these periods of incarceration, Miller was undeterred and continued to commit crimes after release. Importantly, Miller became involved in the conspiracy at issue only months after his release from federal custody. As the Sixth Circuit observed, "[t]he court's conclusion that Miller was likely to reoffend was clearly supported by Miller's substantial criminal history." [Id.]. For all these reasons, this claim fails.

## IV. Conclusion

For the reasons set forth above, the Court holds that neither petitioner's conviction nor his sentencing was in violation of the constitution or laws of the United States and he is not entitled to an evidentiary hearing. His motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, Doc. 800, is DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because

petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE